**Richard F. KELLER, Plaintiff,**

v.

**GRAPHIC SYSTEMS OF AKRON, INC., EMPLOYEES PROFITSHARING PLAN, Defendant.**

**Civ. A. No. C 76–72 A.**

United States District Court,
N. D. Ohio, E. D.

Nov. 10, 1976.

**1006**

Charles J. Tyburski, Black, McCuskey, Souers & Arbaugh, Canton, Ohio, for plaintiff.

William B. Gore, Akron, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

CONTIE, District Judge.

Richard F. Keller (hereinafter plaintiff) initiated this action under 29 U.S.C. § 1132(a)(1)(B) against defendant Graphic Systems of Akron, Inc., Employees Profitsharing Plan (hereinafter Plan) on March 5, 1976. Plaintiff seeks recovery of benefits allegedly due him under the Plan, together with reasonable attorney's fees. The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 1132(e)(1). This matter is before the Court on the parties' stipulation of facts.

### FACTS

On or about July 24, 1961, plaintiff was employed as a salesman by Graphic Systems of Akron, Inc. (hereinafter Graphic Systems). Graphic Systems was and is a corporation engaged in the business of selling and distributing office equipment, including 3M Brand duplicating equipment, in approximately thirteen (13) counties in Ohio, including Stark County. Plaintiff worked for Graphic Systems initially as a salesman and later as sales manager until he voluntarily terminated his employment on August 31, 1973.

The following month, September, 1973, plaintiff secured a position with Xerox Corporation as a salesman of Xerox duplicating equipment in the Stark County area. Plaintiff's employment by Xerox continued until January of 1975. Thereafter, on February 17, 1975, plaintiff was employed by American Business Machines as a salesman of duplicating equipment in the Stark County area. Plaintiff's association with American Business Machines has continued until the present time. It is stipulated by the parties that both Xerox Corporation and American Business Machines are in direct competition with Graphic Systems in the market areas Graphic serves with respect to the sale of duplicating equipment.

While plaintiff was still employed by Graphic Systems, it adopted the Plan in order "to make it possible for eligible employees of said Company to participate in profits of the corporation, and to have greater security proportionate to the profit-making ability of the Company as a whole." The Plan is an "employee benefit plan" within the meaning of 29 U.S.C. § 1002(3) and is qualified under 26 U.S.C. § 401(a). It provides a monetary fund to be used for the welfare of eligible employees by providing benefits upon retirement, permanent and total disability, death or severance of employment. The Plan became effective March 1, 1969, and has continued in operation until the present.

Under the terms of the Plan, plaintiff, having completed two years of continuous service for Graphic Systems on the effective date of the Plan, became an eligible participating employee as of that date. By August 31, 1973, when plaintiff voluntarily

ended his employment with Graphic Systems, there had been credited to his account under the Plan the sum of $11,737.77.

Article VIII(a) of the Plan sets forth the events upon which an eligible employee is entitled to payment from the fund, and the amounts of such payments. Specifically, Article VIII(a)(iii) governs when an eligible employee terminates his employment with Graphic Systems for reasons other than retirement, disability or death. It provides for payment of a percentage of the amount credited to an eligible employee's account in equal annual installments. Such percentage is fixed by a schedule set forth in the Plan and based upon the length of an employee's Plan participation. Payment of the initial installment is to be made subsequent to termination and after the expiration of the applicable waiting period for the particular group into which the employee falls under the Plan provisions. Significantly, this Article further provides that:

> Notwithstanding any other provisions contained in this Plan, if a participant's employment with the Company shall terminate by reason of dishonesty, fraud, theft, or if such employee should enter the employ of a competitor of the Company, which competitor is in direct competition with the Company in any manner within the area in which the Company is selling its products or rendering services, or if a participant while employed by the Company, or after he severs his employment with the Company, shall establish his own business in direct competition with the Company in any manner within the area in which the Company is selling its products or rendering services, all vested rights of such participant shall be forfeited and the amount credited to such participant's account shall be allocated to the accounts of the remaining participants.

It is Article VIII(a)(iii) and the above clause in particular that form the basis of the present controversy.

Applying the terms of Article VIII(a)(iii) to the instant case, plaintiff as of the date his employment terminated, August 31, 1973, was apparently entitled to 40% of the amount credited to his account as he had been a Plan participant for more than four years but less than five years. As stipulated, plaintiff was classified as a "Group A" employee (Salesman), and as such was required to wait two years after his termination before being able to receive any payment to which he might be entitled. Plaintiff's two year waiting period expired on August 31, 1975.

In the interim, however, plaintiff was informed by Graphic Systems, through a letter dated July 12, 1974, that it was the intention of the Plan trustees to declare plaintiff's interest in Plan assets forfeited because Graphic had learned of plaintiff's employment with Xerox, and that by reason of such employment plaintiff violated the so-called "non-competition" clause of Article VIII(a)(iii) set forth above. Not until after August 31, 1975, the date on which the two year waiting period expired, did plaintiff through his counsel make a demand of the Plan and Graphic Systems for payment of his asserted interest. No amounts have been paid to plaintiff from the Plan fund. It is plaintiff's contention that he is entitled to receive $4,724.22, which sum represents the value of plaintiff's asserted vested interest in the Plan as of his termination date.

## DISCUSSION

Initially, the Court is confronted by the question of what law is to be applied to the instant action. Plaintiff contends that the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., govern the disposition of this action. ERISA, signed into law on Labor Day, September 2, 1974,[1] is comprehensive legislation providing minimum standards for the regulation of private

---

1. That is approximately one year after plaintiff's separation from Graphic System's employment, and one year before termination of the aforesaid waiting period applicable to plaintiff under the Plan.

retirement systems, and is designed to protect individual pension rights.

ERISA envisions and specifically provides for private civil enforcement of its terms. See 29 U.S.C. § 1132. Thus plaintiff's assertion that he is a plan participant or beneficiary properly brings this action under 29 U.S.C. § 1132(a)(1)(B) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." This Court has concurrent jurisdiction with state courts of competent jurisdiction of actions commenced under said subsection. See 29 U.S.C. § 1132(e)(1).

The provisions of subchapter 1 of ERISA, which governs among other matters plan participation and vesting, supersede state laws as they relate to plans described in 29 U.S.C. § 1003(a) effective January 1, 1975. See 29 U.S.C. § 1144(a). Further, it is specifically stated that those provisions do not apply "with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." See 29 U.S.C. § 1144(b)(1). Thus the first question becomes: when did plaintiff's cause of action arise?

■ Both parties have agreed that plaintiff's cause of action arose on August 31, 1975. On that date the aforesaid two year waiting period expired and plaintiff was first able to receive any payment to which he might be entitled under the Plan from the account credited to him. It is well established that a cause of action accrues when facts exist enabling a party to maintain a present suit against another. See *Great American Insurance Co. v. Louis Lesser Enterprises, Inc.*, 353 F.2d 997, 1001 (8th Cir. 1965). In other words, a cause of action arises at the first instance when a party can legally maintain a suit in a court of competent jurisdiction. *Id.* See 1 C.J.S. *Actions* § 124a (1936).

In the case at bar, plaintiff presumably could have first brought an action for payment of benefits under the Plan on or after August 31, 1975. Prior to that time the specific provisions of the Plan relating to the two year waiting period precluded the initiation of any action under it. Any demand or suit for payment prior to that date presumably would have been premature as plaintiff's asserted right to the same was not fixed. In light of the terms of the Plan and the stipulations by the parties, plaintiff's cause of action arose on August 31, 1975, more than seven months after the effective date of Section 1144 above. Thus the provisions of ERISA would seem to govern this action.

The dispute herein essentially centers around the application and validity of Article VIII(a)(iii) of the Plan. The main issues outlined by the parties are the vesting of plaintiff's rights to plan assets, and the forfeiture clause of the said Article. Thus the ERISA provisions relating to vesting and forfeiture must be viewed as controlling if applicable.

■ Section 1053 of ERISA sets forth minimum vesting standards for private retirement plans which assure employees of attaining vested rights to benefits after a stated period of service. 29 U.S.C. § 1053. It further delineates a limited number of situations in which an employee's vested rights to benefits may be forfeited. 29 U.S.C. § 1053(b). Thus as explained in House Conference Report No. 93–1280, with the exceptions specifically provided for in § 1053(a)(3), "an employee's rights, once vested, are not to be forfeitable for any reason." 1974 *U.S.Code & Admin.News* 5038, 5052. Noticeably absent for purposes of the instant action is a provision allowing forfeiture of vested rights on account of post-termination competitive employment. It would therefore appear that ERISA proscribes the forfeiture of an employee's vested rights to qualified plan benefits for engaging in employment competition with his former contributing employer upon separation from service.

The effective dates for § 1053 are stated in 29 U.S.C. § 1061. Pursuant to subsection (b)(2), with exceptions not applicable here, where an employee benefit plan is already in existence on January 1, 1974, the provi-

sions of § 1053 are only applicable to plan years commencing after December 31, 1975. As stated in House Conference Report No. 93–1280, accompanying ERISA, "[f]or plans in existence on January 1, 1974, the general effective date of these provisions is to be plan years beginning after December 31, 1975." 1974 *U.S.Code & Admin.News* 5038, 5048. In other words, the vesting standards and forfeiture limitations of § 1053 govern plan years beginning January 1, 1976, where the pension plan itself pre-dates ERISA.

■ In the instant case, the Plan was adopted and became effective March 1, 1969. The Plan was thus in existence on January 1, 1974, the controlling date for determining the relevant effective dates of ERISA provisions under § 1061. Accordingly, the vesting and forfeiture provisions of § 1053 apply to the Plan only as to plan years beginning after December 31, 1975. Therefore, § 1053 does not govern the instant action since all matters in dispute arose before August 31, 1975. It appears, however, that were § 1053 applicable, it would seem to invalidate the forfeiture provisions of Article VIII(a)(iii) in dispute herein.

In light of the foregoing, the Court must conclude that ERISA is not dispositive of the vesting and forfeiture issues raised in this action. Rather the Court must look to pre-ERISA federal and state law with regard to private profit sharing and retirement plans in order to resolve the instant controversy.

The first truly substantive issue raised by the parties concerns the vesting of rights to Plan benefits. Plaintiff consistently maintains that he has a 40% vested interest in the amount credited to his account under the Plan as of his date of termination. In other words, plaintiff claims he is entitled to receive $4,724.22. Defendant to the contrary contends that plaintiff has no vested interest in any benefits under the Plan nor any vested rights to the payment of bene-

fits. Rather, "it is defendant's position that any vested interest of plaintiff was only in eligibility to participate in the Plan by virtue of continuous employment with 'Graphic Systems'." Defendant's Brief at 1.

■ Insofar as plaintiff's claim to a vested interest in Plan benefits has been determined to be outside the scope of ERISA, it appears to arise under state law. To that extent then, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), provides that federal courts are to apply the law of the state except in matters governed by the Federal Constitution or laws. Thus Ohio law is applicable to the determination of plaintiff's claim.

Private retirement systems and pension plans have taken on greater significance with the passage of time.[2] As observed by the Ohio Supreme Court in *Cantor v. Berkshire Life Ins. Co.*, 171 Ohio St. 405, 408, 171 N.E.2d 518, 520–21 (1960), perhaps due to the increased life span of the average worker and the economic realities of the labor market, the availability and nature of retirement benefits have assumed a marked importance for both employees and employers. The Court noted in that widely cited opinion that whereas pensions were initially viewed as mere gratuities totally subject to the whim of employers, they are now recognized as contractual in nature. As stated by the Court in aptly analyzing the development of pension plans:

> When pension programs first came before the courts, pensions were construed primarily as mere gratuities by the employer, subject completely to the will of the employer. Later, as contributing pension systems arose, a distinction was drawn between the contributing and the noncontributing types of plan, the first being held to be a vested right, whereas the latter continued to be construed as a mere gratuity on the part of the employer which could be withdrawn at any time. There has been, however, in recent years a gradual trend away from the gratuity

---

**2.** The very enactment of ERISA evidences the substantial concern with the viability of private retirement programs existing today.

theory of pensions. The courts, recognizing that a consideration flows to an employer as a result of such pension plans, in the form of a more stable and a more contented labor force, have determined that such arrangements will give rise to contractual rights enforceable by the employee who has complied with all the conditions of the plan, even though he has made no actual monetary contribution to the fund. See annotation, 42 A.L.R.2d 467.

*Id.* at 408–9, 171 N.E.2d at 520–21.

The *Cantor* opinion has been cited and relied on by both plaintiff and defendant. Although the facts and issues involved therein are not identical to or analogous with those of the instant action, the fact that *Cantor* is a pronouncement of Ohio law renders it significant. Despite the denomination of the relevant document as a "career contract," the provisions with which the *Cantor* court was concerned established, in effect, a retirement system. Pursuant to the terms of that system or plan, an employee with ten years consecutive full-time service and having reached the age of sixty-five was entitled to certain benefits upon retirement. After the plaintiff in *Cantor* fulfilled all the necessary conditions entitling him to retirement benefits, the defendant company attempted to cancel his contract and thereby destroy his right to such benefits.

The question raised on appeal in *Cantor* was whether an employee's rights in a noncontributory system set up by his employer could be divested by the employer's termination of his contract after the employee had fulfilled all the stated prerequisites entitling him to such benefits. The Court answered in the negative, succinctly holding at 171 Ohio St. 410, 171 N.E.2d 522:

> Therefore, whether a retirement plan is contributory or noncontributory and even though the employer has reserved the right to amend or terminate the plan, once an employee, who has accepted employment under such plan, has complied with all the conditions entitling him to participate in such plan, his rights become vested and the employer cannot divest the employee of his rights thereunder.

Plaintiff having complied with all the conditions in his contract entitling him to retirement rights and having reached retirement age under the contract, his retirement rights became vested and Berkshire could not terminate his contract so as to divest him of such rights.

Drawing upon *Cantor* then, the key to resolution of the instant vesting issue is compliance with the provisions of the Plan. In other words, before plaintiff can successfully assert a vested right to benefits under the Plan, he must have satisfied all the conditions and pre-requisites to eligibility for benefits set forth in the Plan. As per the terms of the Plan, there are three events upon which an employee shall be entitled to receipt of benefits: retirement, death or termination of service. The instant case presents the third event, and thus the provisions of Article VIII(a)(iii) governing such occurrence appear to control.

Under the terms of Article VIII(a)(iii), there are two relevant conditions that must be satisfied before plaintiff or a similarly situated employee acquires a vested right in Plan assets. Initially the employee must be an eligible employee or Plan participant as defined in Article III. Secondly, the employee must have been a Plan participant for at least one year in order to be entitled to any percentage of the amount credited to his account.

Plaintiff is clearly an eligible employee in that under Article VI(a) of the Plan each employee who completed two years of continuous service on the effective date of the Plan became eligible as of that date. On March 1, 1969, the Plan's effective date, plaintiff had served Graphic Systems for in excess of seven years. Thus, on August 31, 1973, the date of his termination, plaintiff had been a Plan's participant for more than four years and was entitled to 40% of the amount credited to his account. Plaintiff, therefore, satisfied the eligibility and serv-

ice requirements, and acquired a vested interest in the Plan's benefits on the occasion of his termination. It can hardly be disputed that the continued faithful service rendered to Graphic Systems by plaintiff was consideration for a share in the profits. By fulfilling the requisite service and time conditions, plaintiff accepted the Plan's offer and the benefits thereunder accrued to him with the passage of time. Thus, by the terms of the Plan, plaintiff had a 40% vested interest in the amount credited to his account as of the date of his termination.

■ This result is bolstered by two additional facts. First, the forfeiture provision contained in Article VIII(a)(iii) specifically provides that upon the occurrence of certain stated events, "all vested rights of such participant shall be forfeited." The Plan in its own language then implies that upon termination an eligible employee has vested rights in a percentage of the Plan assets based on the length of his participation. Secondly, the Plan offer having been accepted by plaintiff, its language must be construed most strongly against defendant since the existing implications could have been restricted by words of limitation. See *Sigman v. Rudolph Wurlitzer Co.*, 57 Ohio App. 4, 7, 11 N.E.2d 878 (1937). The plaintiff "is entitled to the benefit of all reasonable inferences applicable to the words used." *Id.* at 7, 11 N.E.2d at 879.

In light of all the foregoing, the Court must conclude that on August 31, 1973, when his employment with Graphic Systems terminated, plaintiff had a vested interest in 40% of the account credited to him, or $4,724.22.

Although plaintiff's interest was vested upon termination, by the express terms of Article VIII(a)(iii) payment was deferred until the expiration of a two year waiting period. That such provision controlled the manner and time of payment is evidenced by the further statement in Article VIII(d) that "eligible employees shall not be enti-

tled to any benefit or payments except as stated in this paragraph VIII."

In the interim between his employment termination and the expiration of the aforesaid two year waiting period, plaintiff undisputedly engaged in employment competitive with Graphic Systems. Such employment was in blatant disregard of the clear and unequivocal prohibition of the same contained in Article VIII(a)(iii) and quoted above.[3] Pursuant to the terms of that provision, the direct effect of plaintiff's action was to cause a forfeiture of his vested interest under the Plan. The declaration of that forfeiture by the Plan trustees and the refusal to pay plaintiff any benefits upon expiration of the waiting period precipitated this action. The resolution of the instant controversy thus devolves into a determination of the key remaining issue: whether the non-competition forfeiture provision of the Plan is valid and enforceable.

Plaintiff contends that the noncompetition clause is unenforceable under state and federal law as an unreasonable restraint. In addition he advances the argument that enforcement of the forfeiture provision is contrary to Ohio and a developing national public policy against provisions in profit sharing and retirement plans providing for forfeiture of vested rights. Defendant counters by claiming that plaintiff's contentions are without merit or support. It is the defendant's position that by applying a business rule of reason the noncompetition provision is valid and readily enforceable.

Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, generally proscribes "Every contract . . . in restraint of trade or commerce among the several States." In spite of the broad language of the statute, it was long ago recognized by the Supreme Court that the prohibition extends only to contracts which constitute an unreasonable or undue restraint upon trade. See *Standard Oil Co. v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911);

---

**3.** That plaintiff was unaware of or misunderstood the import of the non-competition clause of Article VIII(a)(iii) has not been claimed, and it would appear cannot be rightfully interposed as a defense.

*United States v. American Tobacco Company*, 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663 (1911). Therefore the validity of any contractual restraint is dependent upon its reasonableness. The issue of the within noncompetition clause's reasonableness is to be resolved by an examination of its business context and justifications. See *Golden v. Kentile Floors, Inc.*, 512 F.2d 838, 844 (5th Cir. 1975).

■ In determining the validity of the noncompetition clause of the Plan, it is important initially to recognize that such a restraint is subject to different public policy considerations than is a like restraint in an employment contract. It is a well-settled proposition that:

> The authorities, though, generally draw a clear and obvious distinction between restraints on competitive employment in employment contracts and in pension plans. The strong weight of authority holds that forfeitures for engaging in subsequent competitive employment, included in pension retirement plans, are valid, even though unrestricted in time or geography. The reasoning behind this conclusion is that the forfeiture, unlike the restraint included in the employment contract, is not a prohibition on the employee's engaging in competitive work but is merely a denial of the right to participate in the retirement plan if he does so engage.

*Rochester Corporation v. Rochester*, 450 F.2d 118, 122–23 (4th Cir. 1971). [Footnotes omitted]. The majority of courts who have confronted the issue here presented have upheld the validity of noncompetition forfeiture provisions in pension plans absent a statute to the contrary. See 18 A.L.R.3d 1246 (1968).

The forfeiture provision of the Plan is supported by reasonable business justifications which clearly outweigh any potential harm to plaintiff. It was designed to protect Graphic Systems and its employees from competition by former employees who attempt at the same time to share the benefits of profits earned by faithful employees

whom the Plan seeks to reward for their services. See *Golden v. Kentile Floors, Inc.*, supra, at 846. That such is a legitimate business goal can hardly be denied since it is clearly a business interest to foster the welfare of both the company and its employees. Concern with the same is peculiarly appropriate under the facts herein.

Plaintiff was a salesman of standard business equipment, and it is undisputed that in the sales context the rapport developed between a salesman and the customers in his area can have a marked effect on the measure of his and his employer's success. The trust and confidence placed in the salesman usually does not change despite the fact that the salesman may change employers. With regard to plaintiff then, there was a very real probability that his engaging in employment competitive with Graphic Systems could have an adverse effect on Graphic's success in the territory in which plaintiff continued to work.

In addition, the forfeiture provision did not prevent plaintiff from engaging in competitive employment. It merely presented him with a difficult choice: employment with a competitor or Plan benefits. See *Rochester Corporation v. Rochester, supra; Golden v. Kentile Floors, Inc., supra.* Moreover, it is axiomatic that plaintiff could have engaged in any type of employment other than that offered by Graphic Systems.

The Court recognizes that one of the considerations relied upon by the *Golden* court in finding the contract restriction reasonable under federal common law was that the forfeiture did not divest a vested right. *Golden v. Kentile Floors, Inc., supra,* at 845. It was indicated therein that had divestiture occurred, the court might have viewed "the forfeiture as a liquidated damages remedy for breach of an implied covenant not to compete." *Id.* at 845 n. 13. Under such a view, the noncompetition forfeiture provision has to be scrutinized as to the reasonableness of its breadth and scope. However, even under this standard the subject provisions are enforceable.

Plaintiff has challenged the provision's validity by contending that the restraint is unreasonable in both duration and geographical area. The Ohio Supreme Court, however, has joined those jurisdictions adopting a rule of "reasonableness" with regard to covenants not to compete, and permitting "courts to determine, on the basis of all available evidence, what restrictions would be reasonable between the parties." See *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 25, 325 N.E.2d 544, 547 (1975). Such a rule requires courts to examine all the factors relevant to the parties' situation and fashion a contract reasonable as between the parties and in accord with their intention. *Id.* The *Raimonde* court thus held, at 25, 325 N.E.2d at 547, that:

> [A] covenant not to compete which imposes unreasonable restraints upon an employee will be enforced to the extent necessary to protect the employer's legitimate interests. A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if it is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public. Courts are empowered to modify or amend employment agreements to achieve such results.

Although *Raimonde* dealt with a covenant not to compete in an employment contract, its principles are equally applicable here. The noncompetition provision here is framed in rather broad terms. It does, however, meet the three-fold test of reasonableness quoted above. Also, in light of the facts presented, enforcing the provision involved herein seems quite reasonable. Plaintiff worked as a salesman for Graphic Systems within the Stark County, Ohio area, and upon his termination worked for two competitors of Graphic within the same area. Moreover, the duration of the provision would be four years at most since there was a two year waiting period and at the maximum a two year payment schedule envisioned for plaintiff under the terms of the Plan. Based on these facts, enforcement of the provision cannot be considered unreasonable since its scope and operation are considerably limited in geographical area and duration.

Further, forfeiture of plaintiff's $4,724.22 cannot be considered excessive damages for voluntarily entering into competitive employment. As stated above, the Court finds that the very nature of the employment involved leads reasonably to the conclusion that plaintiff's post-termination activity could have a substantial detrimental effect on Graphic's profits. Such profit loss would in the end adversely affect the Plan and, more importantly, the Plan's participants. Thus the monetary loss to plaintiff caused by the forfeiture pales in significance when compared with the potential loss to faithful Plan participants. Plaintiff has not incurred excessive loss for the privilege of entering into competitive employment.

In light of the foregoing considerations applicable to both Sherman Act and state law analysis, the Court cannot say that the noncompetition forfeiture clause of Article VIII(a)(iii) is unreasonable within the terms of the Sherman Act or Ohio law. With regard to the specific claim that the clause is unenforceable under state law as an unreasonable restraint, no Ohio case dealing with this precise issue has come to the attention of the Court. In view of the apparent trend and weight of authority, however, this Court concludes that an Ohio court faced with the instant issue would hold the noncompetition forfeiture clause valid and enforceable under Ohio law.

Therefore, based on all of the above principles and considerations, the Court concludes that this noncompetition forfeiture clause of Article VIII(a)(iii) is valid and enforceable, and has effected a forfeiture of plaintiff's 40% vested interest by virtue of his employment with two acknowledged competitors of Graphic Systems. The trustees of the Plan properly declared such forfeiture and refused plaintiff's demand for payment made on August 31, 1975. Plaintiff is thus not entitled to payment of any Plan assets.

Finally, the Court deems it appropriate to address the contention that the instant forfeiture provision is contrary to Ohio and an emerging public policy opposed to forfeitures which operate to divest vested rights. Admittedly the current trend of pension plan reform evidenced by ERISA emphasizes securing nonforfeitable pension benefits for employees. Such a consideration replaces the prior ones of reasonableness and business justifications in pension law. It required comprehensive legislation, however, to make that new consideration preeminent, and such legislation is prospective in operation. In other words, the considerations controlling today do not apply to plans established when other concerns prevailed. To invalidate past action on the basis of present and future policy would be manifestly unfair. Thus the Court must evaluate the Plan provision as it has done on the basis of the former considerations discussed above.

██ The final issue to be addressed is plaintiff's claim for attorney fees. As plaintiff points out, ERISA provides that in any action under subchapter I by a plan participant, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). In view of the final disposition of the issues presented, and mindful of the traditional policy against fee awards, except in limited circumstances, the Court deems it inappropriate to award fees and costs in the instant action, and does hereby deny plaintiff's prayer for the same.

IT IS SO ORDERED.