Henry B. BONAR, Sr., Plaintiff,

v.

BARNETT BANK OF JACKSONVILLE, N.A., a corporation, and Florida Ice Machine Corporation, Defendants.

No. 77–404–Civ–J–M.

United States District Court, M.D. Florida, Jacksonville Division.

March 31, 1980.

---

Herman S. Paul, Jacksonville, Fla., for plaintiff.

Donahoo, Rowe & Donahoo, and S. Thompson Tygart, Jr., Jacksonville, Fla., for defendants.

1. ERISA § 502, 29 U.S.C. § 1132 (1976) is the civil enforcement provision of ERISA. Subsection (a)(1)(B) of § 502 provides: "A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan . . . .."

## MEMORANDUM OPINION AND JUDGMENT

MELTON, District Judge.

This action was initiated by Henry B. Bonar, Sr., (hereinafter referred to as the plaintiff) on June 1, 1977, under Section 502 of the Employee Retirement Income Security Act of 1974 (hereinafter referred to as ERISA), 29 U.S.C. § 1001, *et seq.*, (1976)[1], against the defendants, Barnett Bank of Jacksonville and Florida Ice Machine Corporation. The plaintiff, a former employee of Florida Ice Machine Corporation, (hereinafter referred to as the Corporation) seeks recovery of benefits allegedly due him under the Corporation's pension plan, clarification of rights to future benefits under the pension plan, and attorneys fees. The Barnett Bank of Jacksonville is the trustee of the pension plan in question, known as the "Patterson Enterprises Pension Plan" (hereinafter referred to as Plan). The jurisdiction of the Court is invoked under ERISA pursuant to 29 U.S.C. § 1132(e)(1).[2]

This cause was originally tried on March 8, 1979, before the Honorable John H. Wood, Jr., sitting by designation and without a jury. Subsequent to the trial and before entry of final judgment, however, Judge Wood tragically died. The cause is now before the undersigned on the parties' stipulation that the case be decided on the basis of the pleadings, the pre-trial stipulation, the trial record, and supplemental memoranda submitted to the Court by the parties.

## FACTS

The facts are largely undisputed. The plaintiff was employed by the Corporation

2. 29 U.S.C. § 1132(e)(1) provides:
Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

in 1954. The Corporation is in the business of designing, selling and installing industrial refrigeration equipment. Prior to the time that he began working for the Corporation, the plaintiff had been employed for a period of almost twenty years in the refrigeration industry, primarily in the area of sales. The record reflects that at the time he left the employ of the Corporation in mid-1975, the plaintiff had risen to the position of vice president of the Corporation and was area sales manager for a thirteen-county area which was centered around Tampa, Florida.

On December 26, 1973, at a meeting in Tampa, Florida, the plaintiff was informed by Charles Nesbett, Chief Executive Officer of Patterson Enterprises, of which the Corporation is a subsidiary, that he would be mandatorily retired upon reaching age 65, despite the plaintiff's expressed desire to continue working beyond that age, and despite the fact that Nesbett could cite no specific reasons for being dissatisfied with the plaintiff's performance. The plaintiff reached the age of 65 on June 2, 1975, and was scheduled to retire on June 30, 1975. On that date, Nesbett called the plaintiff into his office and informed him that, pursuant to a "noncompetitive clause" contained within the Corporation's pension plan, if he entered into a competing business he would forfeit all of his retirement benefits. However, on the following day, July 1, 1975, the plaintiff began operation of a business known as National Refrigeration, Inc.—a business which the parties have stipulated as being in direct competition with the Corporation. Upon learning of the plaintiff's action, Nesbett so informed the Plan's administrative committee at a meeting held on July 18, 1975. The administrative committee in turn declared a forfeiture of the plaintiff's pension benefits pursuant to Section 5.11 of the Plan and instructed the Plan's trustee to cease all further retirement benefit payments to the plaintiff.[3] Thereupon, the plaintiff instituted this action.

## CONCLUSIONS OF LAW

ERISA is a comprehensive law which filled a major gap in federal labor laws by addressing directly the subject of private employee pension plans. Prior to the enactment of this law, aggrieved employees were often left without a remedy in seeking to recover benefits allegedly due them under a pension plan, *Cuff v. Gleason*, 515 F.2d 127 (2d Cir. 1975), or to correct breaches of duty by fiduciaries in their management of pension funds. *Haley v. Palatnik*, 509 F.2d 1038 (2d Cir. 1975). One of the primary concerns of Congress in enacting ERISA was the concept of vesting. As contemplated by Congress, "vesting" referred to the nonforfeitable right or interest which an employee-participant would acquire in a pension fund upon satisfying basic requirements relating to age and number of years of service. *See* H.R.Rep. No. 93–807, 93d Cong., 2d Sess. 3, *reprinted in* [1974] U.S. Code Cong. & Admin.News, pp. 4670, 4671; H.R.Rep. No. 93–533, 93d Cong., 1st Sess. 5–6 (1973), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 4639, 4643–4645; S.Rep. No. 93–383, 93d Cong., 1st Sess. 3 (1973), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 4890, 4898; S.Rep. No. 93–127, 93d Cong., 1st Sess. 8–9 (1973), *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 4838, 4844–4845. To implement this policy of nonforfeitability, Congress included in ERISA a provision which prescribes minimum vesting standards for pension plans and which narrowly limits the situations in which vested pension rights may be divested.[4] That provision, 29 U.S.C. § 1053(a), provides in pertinent part, that "[e]ach pension plan shall provide that an

---

3. Prior to the administrative committee's meeting on July 18, 1975, the plaintiff received one month's benefit payment in the amount of $235.00. The parties are in agreement that that amount is what the plaintiff would normally be entitled to, on a monthly basis, under the Plan. Record at 22, 53.

4. The limited exceptions in which vested pension rights can be divested, set forth in 29 U.S.C. § 1053(a)(3), are not applicable to the instant case.

employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age . . . ."

Prior to the enactment of ERISA, pension plans frequently contained "bad boy" clauses which provided for forfeitures of pension benefits should an employee be discharged for dishonesty, excessive absenteeism or insubordination, or should the employee compete with his former employer after termination. *See, ERISA'S "Bad Boy": Forfeiture for Cause in Retirement Plans*, 9 Loy.Chi.L.J. 137 (1977). However, with the adoption of Section 1053, referred to above, it is clear that such clauses are no longer enforceable after the effective date of that provision. *See Winer v. Edison Brothers Stores Pension Plan*, 593 F.2d 307 (8th Cir. 1979); *Amory v. Boyden Associates*, 434 F.Supp. 671, 672 (S.D.N.Y.1976); *Keller v. Graphic Systems of Akron, Inc.*, 422 F.Supp. 1005, 1009 (N.D.Ohio 1976).

The effective date of Section 1053 is set forth in 29 U.S.C. § 1061(b)(2), which provides (with certain exceptions not applicable here) that where an employee benefit plan is already in existence on January 1, 1974, the provisions of Section 1053 are only applicable to plan years commencing after December 31, 1975. The effective date of Section 1053 and its attendant proscription of forfeiture clauses form the very crux of the defendants' defense. The defendants argue that because their pension plan was in existence on January 1, 1974[5], Section 1053 was not effective as to the plan until January 1, 1976; this by virtue of Section 1061(b)(2). Therefore, the defendants assert, because the forfeiture was declared in July, 1975, approximately six months before the effective date of Section 1053, the forfeiture was not prohibited by that provision of ERISA.

Had the plaintiff conceded that the provision of the Plan upon which the administrative committee relied in terminating his benefits was clearly one requiring a *forfeiture* of benefits for competing with his former employer, the Court's inquiry might well be at an end as courts have generally refused to invalidate pension benefit forfeitures made pursuant to "bad boy" clauses which were invoked prior to the effective date of ERISA's Section 1053 (usually January 1, 1976). *See, e. g., Amory v. Boyden Associates*, 434 F.Supp. 671, 672 (S.D.N.Y. 1976); *Keller v. Graphic Systems of Akron*, 422 F.Supp. 1005, 1009 (N.D.Ohio 1976). *See also, Fremont v. McGraw-Edison Co.*, 606 F.2d 752 (7th Cir. 1979); *Winer v. Edison Brothers Stores Pension Plan*, 593 F.2d 307 (8th Cir. 1979). The plaintiff insists, however, that Section 5.11 of the Plan, the provision of the plan utilized by the administrative committee in forfeiting his benefits, was intended to effect only a *suspension* of benefits so long as a former employee continued to compete, not an irrevocable forfeiture. Inasmuch as the suspension amounted to a forfeiture of benefits on a monthly basis, the plaintiff contends that Section 5.11 was no longer enforceable against him once Section 1053 became effective on January 1, 1976. In support of his position, the Plaintiff cites *Riley v. MEBA Pension Trust*, 570 F.2d 406 (2d Cir. 1977). In that case, the Second Circuit Court of Appeals held that where the trustees of a pension plan suspended rather than forfeited the benefits of a retiree prior to the effective date of Section 1053, each month's denial constituted a separate forfeiture and a separate wrong and the retiree had a valid claim under ERISA from the date the vesting provisions became applicable.

Thus, the central issue presented in this case is whether Section 5.11 of the Plan, as originally drafted, was intended to impose a complete forfeiture of benefits, or merely a suspension of benefits in the event a retiree entered into competition with the Corporation. If Section 5.11 is construed as effecting a complete forfeiture, it is clear that the plaintiff would not be entitled to relief. *See Amory v. Boyden Associates*, 434 F.Supp. 671, 672 (S.D.N.Y.1976); *Keller v. Graphic Systems of Akron*, 422 F.Supp. 1005, 1009 (N.D.Ohio 1976). However, should Section 5.11 be construed by the

---

5. The plan was adopted effective December 31, 1967. Record at 44.

Court as mandating a suspension of benefits, then the plaintiff would be entitled to recover his pension benefits from January 1, 1976, to the present under the rationale expressed in *Riley v. MEBA Pension Trust.*

The "Non-Competitive Clause", Section 5.11 of the Plan reads:

> The payment of any benefits under this Plan is subject to satisfactory evidence and security submitted to the Committee that for a period of five (5) years any employee who would otherwise be entitled to benefits under this Plan and who has access to records, secrets, or other information which could be used to the detriment of the Company, agrees that he will not enter into business or accept employment in a business which is in direct competition with the Company within a radius of 500 miles of the principal office of the Company.

This provision clearly delineates the employees to which it applies and the conduct it seeks to prohibit. What is unclear, however, is the *sanction* to be imposed against those former employees found to be in violation of Section 5.11—complete forfeiture of benefits or merely the suspension of benefits during the period of competition. In this respect, Section 5.11 is ambiguous; it employs neither the word "forfeiture" nor the word "suspension".

 The Court is compelled for the following reasons to resolve the ambiguity of Section 5.11 by construing that provision as having called for a suspension, rather than a forfeiture, of benefits. First, a fundamental and frequently applied general rule of construction is that when the language of a contract is ambiguous or doubtful, it should be construed against the party who drafted the contract. *Craddock v. Greenhut Construction Co.*, 423 F.2d 111 (5th Cir. 1970); *Union Century Life Ins. Co.*

*v. Neuhoff*, 157 Fla. 98, 24 So.2d 906 (1946); *MacIntyre v. Green's Pool Service*, 347 So.2d 1081 (Fla. 3d Dist.Ct.App.1977); *American Agronomics Corp. v. Ross*, 309 So.2d 582 (Fla. 3d Dist.Ct.App.1975); *Travelers Indemnity Co. v. Washington Federal Savings and Loan*, 214 So.2d 492 (Fla. 3d Dist.Ct.App.1968). *See also*, 17 Am.Jur.2d, *Contracts* § 276 (1964); 11 Fla.Jur.2d, *Contracts* § 106 (1979). In the case under consideration, this rule is applicable because the Plan constitutes at the very least a unilateral contract, inasmuch as benefits were promised the plaintiff for continuing his employment with the Corporation. Moreover, application of the rule seems especially appropriate here in light of the fact that several courts have held that when an employer establishes the terms of a pension plan, those terms should be construed in favor of the employee. *See, e. g., Hoefel v. Atlas Tack Corp.*, 581 F.2d 1 (1st Cir.), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1978); *Rochester Corp. v. Rochester*, 450 F.2d 118 (4th Cir. 1971); *Smith v. Ethyl Corp.*, 417 F.Supp. 669 (S.D. Tex.1976); *Russell v. Princeton Laboratories, Inc.*, 50 N.J. 30, 231 A.2d 800 (1967). In construing the ambiguity of Section 5.11 against the Corporation, that provision, while it was still enforceable, must be deemed as requiring only a suspension of benefits during any period of competition, not a forfeiture of the same.

Second, the Court notes that a separate clause of the Plan, which immediately precedes Section 5.11, states in clear and unequivocal language that an employee or former employee will forfeit his pension benefits if he commits certain acts detrimental to the Corporation.[6] Thus, the implication is that if the Corporation had intended to require a forfeiture of benefits for competition on the part of former employees, it

---

**6.** Section 5.10 of the Plan, entitled "Dishonesty Clause", reads:

> In the event an employee or former employee commits an act of dishonesty, fraud, gross neglect of duty, intentional damage to the property of the Company, or the intentional performance of any act materially inimical to the interests of the Company, he shall forfeit all rights and interests he, his estate, or any beneficiary designated by him, may have in any policy, contract, or the Auxiliary Investment Account, and the same shall be and become the property of the Trustee to be held and disbursed by it in accordance with the terms hereof.

would have either included "competition" among the acts proscribed in Section 5.10, or it would have employed in Section 5.11 language similar to that found in Section 5.10.

Because the plaintiff's benefits were merely suspended rather than irrevocably forfeited, the Court concludes that the plaintiff is entitled to receive pension benefits accruing after January 1, 1976. *See Riley v. MEBA Pension Trust*, 570 F.2d 406 (2d Cir. 1977).[7] With respect to those benefits which would have been payable to the plaintiff from August through December, 1975, the Court is of the opinion that their suspension was proper. In so holding, the Court notes that noncompetition clauses in pension plans providing for a suspension of benefits were valid and enforceable in Florida prior to their proscription by ERISA, so long as they contained reasonable limitations relating to time and place. *Flammer v. Patton*, 245 So.2d 854 (Fla.1971). *See also* Fla.Stat. § 542.12(2)(a) (1979).[8] In view of the evidence adduced at trial, neither the resultant time limitation (five months) nor the place limitation (500 miles from the Corporation's home office) can be considered unreasonable. Finally, after careful review of the record, the Court is satisfied that the plaintiff had sufficient notice of the noncompetition provision to permit suspension of his pension benefits.

7. In following the rationale utilized by the Second Circuit Court of Appeals in *Riley v. MEBA Pension Trust*, 570 F.2d 406 (2d Cir. 1977), the Court specifically rejects the reasoning of the Seventh Circuit Court of Appeals in *Fremont v. McGraw-Edison Co.*, 606 F.2d 752 (7th Cir. 1979). In *Fremont*, the Court held that ERISA only prohibits the forfeiture of benefits of those who were in an employment status on or after January 1, 1976. This holding would permit the present enforcement of pension plan noncompetition clauses against former employees who retired before January 1, 1976, and who began competing with their former employer after that date. In light of the legislative history of ERISA and considering the conclusions of the various courts which have addressed the question, the Court simply does not believe that Congress intended to permit the enforcement of forfeiture provisions as against *any* pension plan participants beyond the effective date of ERISA's minimum vesting requirements. *See* H.R.Rep. No. 93–807, 2d Sess. 60, *reprinted in* [1974] U.S.Code Cong. &

## ATTORNEYS FEES AND COSTS

ERISA provides that in an action brought by a pension plan participant to recover benefits due to him under the terms of his plan, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). In view of the fact that resolution of the instant case turned primarily upon questions of law upon which reasonable minds could differ, and mindful of the traditional policy against awarding attorneys fees except in limited circumstances, the Court deems it inappropriate to award the plaintiff attorneys fees and shall deny his prayer for the same.

For the reasons stated above, the Court will enter judgment in the amount of $11,985.00 in favor of the plaintiff representing the cumulative amount of pension benefits due from January 1, 1976, through March, 1980, and costs. Further, the Court will direct the defendants to pay the plaintiff the sum of $235.00 per month, commencing April 1, 1980, and continuing indefinitely thereafter in accordance with the terms of the Plan.

## FINAL JUDGMENT

In accordance with the Court's opinion of this date it is hereby

Admin.News, pp. 4725–4726; *Winer v. Edison Brothers Stores Pension Plan*, 593 F.2d 307 (8th Cir. 1979); *Amory v. Boyden Associates*, 434 F.Supp. 671, 672 (S.D.N.Y.1976); *Keller v. Graphic Systems of Akron, Inc.*, 422 F.Supp. 1005, 1009 (N.D.Ohio 1976).

8. ERISA § 514(a), 29 U.S.C. § 1144(a) preempts state law applying to employee benefit plans effective January 1, 1975—even though, as noted in the Court's opinion, the vesting provision of ERISA, 29 U.S.C. § 1053, which proscribes forfeiture clauses such as that in issue, did not become effective as to the instant case until January 1, 1976. During this "gap" period, however, the Court may properly look to pre-ERISA state law. *See Saffo v. Occidental Life Ins. Co.*, 602 F.2d 1265, 1276 (8th Cir. 1979); *Keller v. Graphic Systems of Akron, Inc.*, 422 F.Supp. 1005 (N.D.Ohio 1976). *But see Amory v. Boyden Associates*, 434 F.Supp. 671 (S.D.N.Y.1976).

ADJUDGED:

1. That judgment is entered in favor of the plaintiff in the amount of $11,985.00, said sum representing the cumulative amount of pension benefits accrued to the plaintiff from January 1, 1976, through March, 1980, and costs.

2. That the plaintiff's prayer for declaratory and injunctive relief is granted. The defendants are hereby ordered to pay the plaintiff the sum of $235.00 per month, commencing April 1, 1980, and continuing indefinitely thereafter in accordance with the terms of the Patterson Enterprise Pension Plan.

3. That the plaintiff's prayer for attorneys fees is denied.