Harcourt AMORY, Jr., Plaintiff,

v.

BOYDEN ASSOCIATES, INC., Employees' Profit-Sharing and Voluntary Savings Plan, Boyden Associates, Inc., Allan W. Greene, William J. Graham and Paul E. Wilson, Individually and as members of the Managing Committee of the Plan, Defendants.

No. 75 Civ. 6453.

United States District Court, S. D. New York.

Oct. 6, 1976.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City by Joseph M. Burke, Lawrence J. Lafaro, Stephen R. Kruft, New York City, of counsel, for plaintiff.

Skadden, Arps, Slate, Meagher & Flom, New York City by William R. Meagher, Thomas J. Schwarz, Richard Bemporad, New York City, of counsel, for defendants.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Defendants move to dismiss and for summary judgment pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure, and plaintiff cross-moves for partial summary judgment on the first claim of his complaint. We have determined that neither motion can be granted.

. Plaintiff had been employed by defendant Boyden Associates, Inc. (Boyden) for sixteen years when, in July of 1975, he voluntarily resigned to work for another firm. At that time he had accumulated approximately $70,000 in vested benefits in the Boyden Associates, Inc. Employees' Profit-Sharing and Voluntary Savings Plan ("the Plan"). The Plan contained a provision that an employee who went to work for a competing firm within five years of leaving Boyden Associates would forfeit all benefits even though vested. In August, 1975, the individual defendants, as members of the Plan's Managing Committee, determined that the plaintiff was employed by a competitor and declared his benefits forfeited. Plaintiff then brought this action challenging both the general validity of the forfeiture provision and the declaration of forfeiture.

Plaintiff's attack on the general validity of the Plan is based on the theory that its prohibitive provisions are unreasonably broad in scope. As to the particular forfeiture in question, plaintiff contends that there is no basis for the Managing Committee's finding that his present employer is, in fact, a competitor of Boyden. In addition, pointing to the fact that the individual defendants (in their individual capacities) benefitted by their decision (as members of the Managing Committee) to forfeit his interest, he urges that their action should be set aside as *per se* fraudulent. The defendants have urged us to dismiss these contentions on a variety of grounds, relying especially on certain New York State decisions to the effect that the reasonableness and operation of forfeiture provisions such as the one in question is not ordinarily open to judicial review. *Kristt v. Whelan* (1st Dept. 1957) 4 A.D.2d 195, 164 N.Y.S.2d 239, *aff'd without opinion* (1958), 5 N.Y.2d 807, 181 N.Y.S.2d 205, 155 N.E.2d 116. But see *Bradford v. New York Times Co.* (2d Cir. 1974) 501 F.2d 51. See also *Wyper v. Providence Washington Insurance Co.* (2d Cir. 1976) 533 F.2d 57.[1]

Plaintiff, on the other hand, argues that the defendants' authorities are irrelevant because the standards to be applied to the Plan must be derived, not from New York State law, but from the 1974 Employees Retirement Income Security Act ("ERISA or the Act"), 29 U.S.C. § 1001 *et seq.* We agree.

ERISA was enacted on September 2, 1974, and as of that date federal courts have had jurisdiction to grant relief based upon it. 29 U.S.C. § 1132. Several provisions of the Act are here relevant: § 1144, effective as of January 1, 1975, which preempts State law concerning employee benefit plans; and § 1053, effective January 1, 1976, which provides detailed specifications which every employee benefit plan must meet and—as of the 1976 effective date—renders void any forfeiture provision such as the one here at issue.

It is at once obvious that nothing in the Act expressly deals with a forfeiture declared in the period between January 1, 1975 (when State law was replaced by Federal) and January 1, 1976 (when forfeiture of this nature became outlawed). Plaintiff would have us fill this apparent void by pre-dating the prohibition of forfeiture, while defendants would have us rule that insofar as it concerns forfeitures the Act is wholly without effect until January of 1976. We think neither view is tenable.

It seems to us that all aspects of the Act can be taken into account by interpreting it as declaring that forfeitures are not *per se* void until January 1976, but that until then (after January 1, 1975) their effect and operation may not be judged by pre-existing State law, but must be governed by Federal law as derived from the Act.

If we are correct in this view it would follow that we are faced with a situation where there is no binding precedent applicable to the controversy at bar. While

---

**1.** The authorities cited in the text are in conflict as to whether a court can review the general reasonableness of a forfeiture provision such as the one in this case. However, they are in accord that, absent fraud or bad faith, the determination by a pension committee that such a provision is applicable to a particular plaintiff is unreviewable.

there exist several federal decisions dealing with pension forfeitures (see *e. g. Bradford v. N.Y. Times, supra; Gumerove v. Feature Ring Co.* (S.D.N.Y. February 6, 1976) unpublished opinion, Owen, J., 75 Civ. 4177) none purported to determine the impact of the public policy expressed in ERISA.

 It seems to us that during the interim between January 1, 1975 and January 1, 1976 declarations of forfeiture of vested pension rights must be subject to judicial scrutiny according to a reasonableness test. The standard of reasonableness, should, as a consequence of the public policy expressed in the Congressional mandate, be a rigorous one and should be applied both to forfeiture provisions and their application. H.R.Conf. Rep.No.93–1280, 93rd Cong., 2d Sess. (1974) at 3 U.S.Code Cong. & Admin.News, p. 5052; H.R.Rep.No.93–807 (93rd Cong. 2d Sess. (1974), *Id.* at p. 4726. Indeed, we believe that during this interim period ERISA creates a presumption of unreasonableness in forfeiture provisions and places the burden of proof on those who wish to apply them. Our conclusion is strengthened by our reading of the legislative history of ERISA, which indicates that the effective date of the prohibition against forfeiture provisions in pension plans was delayed until January 1, 1976 not because of any Congressional hesitancy concerning the wisdom of the prohibition, but because employers needed more time to insure that their funds were adequately financed to comply with the statute's vesting requirements—of which the anti-forfeiture section is a part. *Id.* at pp. 4738, 4690.

In the case at bar, therefore, the following questions will have to be determined in light of such reasonableness standard:

1. Were the textual provisions of the contract reasonable in scope?
2. Were those provisions, if reasonable, properly applied?

---

**2.** In the context of the newly developing federal common law this last consideration may well lose importance. Regardless of the managing committees' good faith or lack of it the employ-

3. Was it conscionable to have a decision concerning forfeiture made by persons in a position to profit at plaintiff's expense, and, if so, what remedies are now open to the respective parties?[2]

As all these questions necessarily present issues of fact, both parties' motions for summary judgment must be denied.

SO ORDERED.

---

er would have the burden of satisfying the court that the forfeiture provisions had been reasonably applied.