558 F.Supp. 861 (1982)
Mr. and Mrs. Donald P. FLYNN, Plaintiffs,
v.
SAVINGS AND PROFIT SHARING PLAN FOR the EMPLOYEES OF REPUBLIC OF TEXAS CORPORATION and its Participating Affiliates, et al., Defendants.
Civ. A. No. CA-3-78-20-W.
United States District Court, N.D. Texas, Dallas Division.
March 16, 1982.
*862 Kelly D. McGehee, Kelly D. McGehee, Inc., Robert D. Conkel, Dallas, Tex., for plaintiffs.
James A. Williams, Bailey, Williams, Westfall, Lee & Fowler, Dallas, Tex., for intervenor Aetna Cas. and Sur. Co.
*863 Johnny D. Mixon, Martha Joe Stroud, Asst. U.S. Attys., Dallas, Tex., for intervenor U.S.
David R. McAtee, Thompson, Knight, Simmons & Bullion, Dallas, Tex., for defendants.

MEMORANDUM OPINION
WOODWARD, Chief Judge.
This is an action brought against Savings and Profit Sharing Plan for the Employees of Republic of Texas Corporation and its Participating Affiliates (the "Profit Sharing Plan") and Retirement Plan for Employees of Republic of Texas Corporation and its Participating Affiliates (the "Retirement Plan").[1] The Plaintiffs, Mr. and Mrs. Donald P. Flynn, are seeking to compel payment of certain benefits allegedly due them under the Profit Sharing Plan and the Retirement Plan. This court has jurisdiction of the action pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA" or "the Act"), 29 U.S.C. § 1132.
Both the plaintiffs and defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties filed a Joint Stipulated Record to be considered by the court in making a determination on these motions. The court has considered the briefs filed by the parties and the oral argument presented by counsel at the hearing held on February 5, 1982.
The stipulated facts establish that Mr. Flynn was first employed by Republic National Bank of Dallas in October 1958. Mr. Flynn's employment with the Bank was terminated on February 18, 1975. Republic National Bank of Dallas is a participating affiliate with respect to both the Retirement Plan and the Profit Sharing Plan. Stip. Record 1.2; 3.2; 4.2. Plaintiff's employment with the Bank was terminated because of his admitted acts of dishonesty. Stip. Record 3.8. In the United States District Court for the Northern District of Texas, Dallas Division, Mr. Flynn pleaded guilty to and was convicted of the charge of misapplication of bank funds and making, or causing to be made, a false entry in bank records by a bank official in violation of 18 U.S.C. §§ 656 and 1005. Stip. Record 1.3.
On February 16, 1976 the plaintiff, through an attorney, made written demand upon the defendants for payment of pension and profit sharing plan proceeds allegedly due him. Stip. Record 3.16; Ex. E. Mr. Flynn's demand was refused and he requested a hearing in regard to the denial of his claim. A hearing was conducted on January 6, 1977 by the Profit Sharing Plan Committee and the Retirement Plan Committee to consider Mr. Flynn's claims. Stip. Record 3.18; 4.17. By letter dated February 4, 1977, the plaintiffs were notified that these committees had determined that the plaintiffs had no rights or interests in any benefits under either of the Bank's plans. Stip. Record 3.19; 4.18; Ex.G.
The Retirement Plan Committee determined that plaintiff's interest in the Retirement Plan had not vested at the time plaintiff's employment with the Bank was terminated. Under the terms of the Retirement Plan, at the date of Mr. Flynn's termination of employment, he did not have a vested interest because, although he had completed more than fifteen years of credited service with the Bank, he had not also attained the age of fifty-five (55) years.[2] Stip. Record 4.9. Therefore, he was not eligible for any benefits under that plan.
Mr. Flynn's vested interest in the Profit Sharing Plan was determined to have been forfeited because his employment with the *864 Bank was terminated for acts of dishonesty. The Profit Sharing Plan, in effect at the time of Mr. Flynn's termination, contained a "bad boy" or dishonesty clause which provided that an employee terminated by the Bank for dishonesty forfeited any interest in the Profit Sharing Plan other than his own contributions.[3] Stip. Record. 3.13. Since Mr. Flynn made no contributions to the Fund and was dismissed for admitted acts of dishonesty which culminated in a plea of guilty in criminal proceedings, the Bank determined that the plaintiff automatically forfeited any entitlement on the date of his termination. Stip. Record 3.10; Ex.F.
The question raised by the plaintiffs here is the applicability of ERISA to the present case. ERISA was enacted on September 2, 1974, however, the effective dates of various sections of the Act were delayed. The sections relevant here include ERISA § 514, 29 U.S.C. § 1144, which preempts State law concerning employee benefit plans and which became effective as of January 1, 1975. Plaintiffs' cause of action arose after § 514 came into effect and therefore federal law must be applied in this case.
The main dispute here involves the applicability of ERISA § 203, 29 U.S.C. § 1053, which provides detailed specifications which every employee benefit plan must meet and which provides that vested pension benefits cannot be divested except in certain limited instances. Section 203 became effective on January 1, 1976. It is well established that § 203 renders invalid "bad boy" or forfeiture provisions such as those involved here. Fremont v. McGraw-Edison Co., 606 F.2d 752, 754 (7th Cir.1979); Amory v. Boyden Associates, 434 F.Supp. 671 (S.D.N.Y.1976). The question is whether this section can be applied to protect these plaintiffs from such a forfeiture.
Mr. Flynn was discharged on February 8, 1975, and the defendants argue that any rights plaintiffs may have had to plan proceeds were automatically forfeited on that date. Therefore, defendants conclude that the plaintiffs lost their rights before the effective date of § 203 and before forfeiture clauses became per se invalid.
On the other hand, plaintiffs argue that there was not a complete denial of benefits until February 4, 1977 when plaintiffs were given a written notice of the denial of their claims. ERISA § 503, 29 U.S.C. § 1133 requires every employee benefit plan to provide written notice of a denial of a claim and the reasons therefor to the participant and the participant must be afforded reasonable opportunity for review of a denial by the fiduciaries of the plan. Section 503 became effective prior to plaintiff's termination and plaintiffs have not complained of a violation of this procedure. However, plaintiffs claim the forfeiture occurred when the pension committees formally denied the claims after the reexamination as required in § 503. Therefore, plaintiffs claim February 4, 1977 is the relevant date for determining the applicability of § 203.
As stated before, federal law preempted the field of employee benefit plans on January 1, 1975, however, dishonesty forfeiture provisions were not specifically outlawed until January 1, 1976. This left a one-year hiatus period in which federal common law has been applied. In Amory v. Boyden Associates, supra, at 673, the court declared that during this hiatus period the common law requires that forfeiture of vested rights be subject to a rigorous reasonableness test which creates a presumption of unreasonableness.
This court is of the opinion that this same reasonableness test should be applied *865 to the facts of this case. While it may be true that the final denial of benefits did not occur until February 4, 1977, a claim for pension benefits arose on the date plaintiff was discharged which was during this interim period. While this court refuses to hold that there was an automatic forfeiture of all rights on that date, the court does hold that the rights of the parties were fixed by the law in effect on that date. The federal common law must govern these pre-ERISA facts. The plaintiffs waited almost a full year, until a new law came into effect, before contesting the non-payment of benefits under both of said plans. While this court is appreciative of the remedial purpose of ERISA, it can find no reason to give the legislation retrospective effect in this case. The defendants were under no further duty to act in 1975 after plaintiff's employment was terminated but instead the burden was on the plaintiff to first bring a claim. The plaintiff should not be allowed to take full advantage of ERISA under these facts.
The standard as established by the court in Amory, however, is derived from the purpose and the spirit of the Act. During this interim period, ERISA created a presumption of unreasonableness in forfeiture provisions. However, by applying this standard to the present facts, this court finds that it was not unreasonable for the Bank to deny profit-sharing benefits to an employee who admittedly used his position to commit dishonest acts to the detriment of the Bank. By applying the federal common law, it is the ruling of this court that plaintiff's rights are to be determined as of the date of Mr. Flynn's termination and that the forfeiture provision was valid and enforceable against the plaintiff under the facts of this case.
As discussed more fully hereinafter, plaintiffs maintain that upon the enactment of ERISA and its provision allowing for early retirement, they did have a vested interest in benefits under the Retirement Plan. Nevertheless, even if plaintiff did have a vested interest under the Retirement Plan, the Bank would have treated such interest as forfeited when plaintiff was dismissed due to his acts of dishonesty. The Retirement Plan included a dishonesty forfeiture provision substantially the same as the one included in the Profit Sharing Plan. Stip. Record J-63. Therefore, the same analysis would be applied to uphold the enforceability of this forfeiture clause as to any benefits under the Retirement Plan.
The court has determined to look beyond the above analysis and arrive at an independent conclusion based on a close reading of ERISA and the plans at issue. It is the plaintiff's position that upon Mr. Flynn's termination of employment he remained in the status of a participant in the plan and that the proper criteria under the statute and the plans is participation and not employment.
ERISA specifically defines the term "participant" in § 3, 29 U.S.C. § 1002(7), to mean:
any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
ERISA defines the term "employee" in § 3, 29 U.S.C. § 1002(6) as "any individual employed by an employer."
As previously discussed, the vestiture provision at § 4.5(A)(5) of the Retirement Plan in effect at the time of Mr. Flynn's termination on February 18, 1975 provided that an employee had to have attained the age of fifty-five (55) years and have completed fifteen (15) years of credited service at the time of his termination to be entitled to any benefits under the plan. By definition, the Plan treated a termination of services of an employee between the age of fifty-five (55) and normal retirement age, as "early retirement." Stip. Record J-47.
The subsequently revised plan, effective January 1, 1976, at § 1.2 states:

*866 Each person who was a participant in the Superseded Plan, if any, of the Employer as of the day immediately preceding the Effective date of the Plan will become a Participant in the Plan on the Effective date of the Plan.
Stip. Record Ex. J-100.
Mr. Flynn argues that since he was a participant in the plan in effect at the time of his dismissal, under the definition including former employees, he was also a participant in the amended plan. ERISA § 206(a), 29 U.S.C. § 1056(a) required the amended plan, however, to provide for payment of early retirement benefits to a participant who satisfied the service requirements for such early retirement benefits, but separated from the service before attaining the age requirement. Section 2.5 of the amended Retirement Plan made such a provision in compliance with ERISA § 206(a). Stip. Record J-122. Accordingly, if plaintiff's position is correct that his status as a participant in the amended plan is controlling, then he argues he would be entitled to benefits as provided in § 2.5 of the plan.
Extending plaintiffs' argument, they contend that participation continued until a final determination was made in February of 1977, after the effective date of the non-forfeiture provisions of § 203. Therefore, they conclude that the § 203 prohibits a forfeiture of their vested interests in the Profit Sharing and Retirement Plan benefits.
This court does not believe it is necessary to make a specific finding on plaintiffs' "participation" argument. Instead the court chooses to follow the reasoning and apply the law as set forth in Fremont v. McGraw-Edison, supra.
In Fremont, the plaintiff Fremont voluntarily resigned from employment with the defendant in November of 1975 to form his own business. Prior to resigning, however, plaintiff stole trade secrets from defendant for use in his own business. The defendant Company was unaware of the theft until after Fremont resigned. The plaintiff filed written claim for his pension benefits in September 1976 and this claim was formally denied by the defendant.
The facts in Fremont are strikingly similar to the facts of the present case. Fremont terminated his employment in November of 1975 before the non-forfeiture provisions of ERISA § 203 became effective. However, the Plan trustees did not officially deny plaintiff's claim until 1976. Although the court held that the plaintiff's rights were not forfeited until after the effective date of the pertinent section on January 1, 1976, the court declined to extend to the plaintiff the protection against forfeiture provisions. The court refused to adopt the plaintiff's theory that the date he was formally denied his request for benefits was the relevant date for determining the applicability of § 203.
The reasoning of Fremont is persuasive because the court merely interpreted the plain language of the statute. ERISA § 203, 29 U.S.C. § 1053 specifically states that effective January 1, 1976, "each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable." By referring to the definitions of "employee" and "participant" included in ERISA, as set forth previously, it is obvious that the statute did not extend the vesting provisions to include former employees. Instead the applicability of § 203 was specifically restricted to "employees." Therefore, the court in Fremont concluded that "§ 203 only protects against forfeiture the benefits of those who are in employee status on January 1, 1976, or thereafter." 606 F.2d at 755.
This court finds the above ruling as dispositive in the present case. Although the forfeiture of plaintiffs' rights arguably occurred after the effective date of § 203, this is immaterial under the ruling in Fremont. Mr. Flynn was not an "employee" on January 1, 1976 and therefore he could not be protected against the forfeiture of any benefits he may have been entitled to under the plans.
The final question to be decided here concerns the effect of the community *867-871 property laws of Texas on the forfeitures here at issue. The court agrees that the plaintiff spouse, Mrs. Flynn, possessed a contingent community property interest with respect to whatever interests Mr. Flynn had in the pension benefits. The court further finds, however, that the plaintiff spouse could not, under Texas community property law, possess any greater interest or right in the pension benefits than that possessed by the plaintiff. See, Mora v. Mora, 429 S.W.2d 660 (Tex.Civ.App.San Antonio 1968, writ dism'd). In other words, the interest of the nonemployee spouse in the pension benefits is, like the interest of the plaintiff employee, subject to forfeiture. Therefore, since Mr. Flynn's interest in the plan benefits was rightfully forfeited, then his spouse's community property interest was likewise properly forfeited.
The court has discussed two distinct theories in making its determinations in this case, both leading to the same result. The court is convinced that this is the only just result and therefore, for the reasons set forth above, defendants' motion for summary judgment is hereby granted and plaintiffs' motion denied.
A judgment will be entered accordingly.
NOTES
[1] Plaintiffs also name as defendants James D. Berry, W.C. Hatfield, James W. Keay, Charles H. Pistor, Jr., and C.B. Peterson, Jr. The plaintiffs allege liability of these individuals as fiduciaries of the employee benefit plans.
[2] § 4.5(A)(5) of the Retirement Plan, as amended effective January 1, 1970, provided:

[A]ny employee whose service is terminated prior to the date as of which he has both attained the age of 55 years and completed 15 years of credited service shall not be entitled to any benefit under the plan whatever.
Stip. Record Ex. J-19.
[3] § 8-6 of the Profit Sharing Plan provided:

If a participant is dismissed from the Bank's employ because of an act of dishonesty and such act is accompanied by either a confession, a conviction, a plea of guilty or a plea of nolo contendere, such Participant, notwithstanding any other provisions of this Article, shall receive only an amount equal to the difference, if any, between the sum of his own contributions to the Fund as evidenced by the books of the Trustee and the total of his withdrawals of such contributions under Sec. 8-1, together with simple interest on net balances of his undrawn contributions at two percent (2%) per annum. The remainder of the account balance after deducting said payments shall be forfeited.
Stip. Record Ex. A-50A-51.