Edward BRUCHAC, et al., Plaintiffs,

v.

UNIVERSAL CAB CO., etc., et al., Defendants.

No. C79–155.

United States District Court,
N.D. Ohio, E.D.

Jan. 23, 1984.

---

Theodore E. Meckler, Peter A. Joy, Paula Goodwin, Cleveland, Ohio, for plaintiffs.

Joseph F. Lombardo, R. Jeffrey Pollock, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION

DOWD, District Judge.

Plaintiffs, Edward Bruchac, Lydia MacDonald, Hazel Reaves, and Clara Payne, filed the above-captioned case as a class action against defendants, William Klugg, United Garage and Service Corp. of Cleveland, Inc., Yellow Cab Co. of Cleveland, Inc., Zone Cab Corporation, Universal Cab Company, Yellow Cab Limousine, Inc., Arthur McBride, Jr., and John Doe fiduciaries alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* and the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Before the Court are cross-motions for summary judgment in which the parties raise the following issues: whether the nonforfeitability provisions of ERISA, 29 U.S.C. § 1053, apply to the plaintiffs' pension plan and whether the defendants breached the pension plan agreement as provided in the collective bargaining Agreement. For the reasons which follow, summary judgment is granted in favor of the defendants with regard to plaintiff Lydia MacDonald and the class she seeks to represent, on counts two and four of the complaint; defendants' motion for summary judgment is denied with regard to all other plaintiffs on counts two and four; summary judgment is granted as to liability only, in favor of plaintiffs Bruchac, Reaves, and Payne on counts two and four; plaintiffs' and defendants' motions for summary judgment are denied with regard to all plaintiffs on count three.

## PROCEDURAL BACKGROUND

A status call was held in the above-captioned matter on January 14, 1983. At that status call it was agreed by counsel for the parties that the Court would rule first upon the motions for summary judgment with regard to Counts two, three, and four of the complaint which relate to the plaintiffs' right to pension benefits.

## FACTUAL ALLEGATIONS

Plaintiffs allege as follows: they were members of Taxicab Driver's Union, Local No. 555 and Local 507, which are affiliated with the International Brotherhood of Teamsters. A collective bargaining agreement, which provided for a pension plan, was entered into between the Union and the defendants on November 1, 1966. The original agreement provided employees who reached age sixty-five with twenty-five years of continuous full-time employment with the defendant companies, were eligible for a monthly pension payment upon retirement. The plan was amended several times to increase the benefits. In 1970, the plan was amended to allow those employees with thirty years of continuous full-time employment to retire at age sixty and those employees with twenty years of continuous employment to retire at age sixty-five.

Defendant McBride attests as follows: he is the president and the chief executive officer of all of the defendant companies. Defendant Klugg is the treasurer of all of the defendant companies. In the mid-1970's the defendant taxicab companies began operating at a loss. To avoid this result the companies reorganized and effective June 1, 1977, began operating under a lease system. Under the lease system all taxicab drivers were terminated as employees of the defendant companies. The taxicab drivers operated as independent contractors and leased their taxis from the defendant companies. The plaintiffs' union agreed to the change to the lease system.

Under the lease system the defendant companies provide a pension plan for mechanics and telephone room employees. The new pension plan includes as participants all retired taxicab drivers who would have been eligible under the old plan. Plaintiffs in this action were not eligible for benefits under the old pension plan and therefore, are not included as participants in the new pension plan.

Plaintiff Edward Bruchac alleges that he was employed by the defendant companies for twenty-two years and eleven months and that he was fifty-six years of age when his employment was terminated in June, 1977.

Plaintiff Lydia MacDonald alleges that she was employed by the defendant companies for nineteen years and eight months and that she was sixty-one years of age when her employment was terminated in February, 1975.

Plaintiff Hazel Reaves alleges that she was employed by the defendant companies for nineteen years and ten months and that she was fifty-six years of age when her employment was terminated in June, 1977.

Plaintiff Clara Payne alleges that she was employed by the defendant companies for twenty years and three months and that she was fifty-two years of age when her employment was terminated in June, 1977.

## DISCUSSION AND LAW

Plaintiffs allege that certain minimum rights in the pension plan[1] became vested on the effective date[2] of the nonforfeiture provisions of ERISA, 29 U.S.C. § 1053.

In count two plaintiffs allege that the pension plan was a part of the Collective Bargaining Agreement between the defendant companies and plaintiffs' union. Plaintiffs further allege that the nonforfeiture provisions of ERISA became a term of the pension plan and therefore; the denial

---

1. *See infra.* f. 4.

2. The nonforfeiture provisions of ERISA govern plan years beginning on January 1, 1976 for plans in existence on January 1, 1974. 29 U.S.C. § 1061(b)(2). *Keller v. Graphic Systems of Akron, Inc.,* 422 F.Supp. 1005, 1008–09 (N.D.Ohio 1976).

of plaintiffs' pension benefits was a breach of the collective bargaining agreement pursuant to 29 U.S.C. § 185.

In count four plaintiffs allege a straight violation of the nonforfeiture provisions of ERISA. Consequently, for plaintiffs to succeed on counts two and four of the complaint the nonforfeiture provisions of ERISA must apply to the plaintiffs' pension plan. Because counts two and four are premised upon vesting claims pursuant to ERISA, they will be consolidated for the purpose of discussion of the summary judgment motions.

## I. *ERISA Claims.*

Title IV of ERISA, 29 U.S.C. § 1301 *et seq.*, establishes the Pension Benefit Guaranty Corporation (PBGC). The PBGC insures employee pension benefits of certain pension plans. If the PBGC makes payments to employees, it has a right to reimbursement from the employer. 29 U.S.C. § 1303, 1362. The PBGC does not guarantee all pension plans. The plan must meet certain statutory requirements before it will be insured.[3]

Title I of ERISA, 29 U.S.C. § 1053 provides that "an employee's right to his normal retirement benefit is nonforfeitable." The benefits become vested after a minimum length of service which can be calculated under three formulas.[4] Plaintiffs allege they have been employed by the defendant companies the requisite length of service.[5]

Congress delayed the effective date of the nonforfeitability provisions of ERISA

---

3. 29 U.S.C. § 1321(A) provides that a pension plan must meet the requirements of 26 U.S.C. § 404 to be guaranteed by the PBGC. 26 U.S.C. § 404 requires a "funded" pension plan. That is, the employer must contribute to a pension fund, which will be used to pay the pension benefits of the employees. If the employer establishes a funded pension plan, he may take a deduction from his income taxes for contributions to the pension fund. The pension plan set up on behalf of the taxicab drivers was not a funded plan. Payments were made directly out of the general corporate funds. Consequently, the pension plan was not guaranteed by the PBGC.

4. The minimum length of service required of an employee prior to nonforfeiture of benefits may be calculated as follows:

(A) A plan satisfies the requirements of this subparagraph if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions.

(B) A plan satisfies the requirements of this subparagraph if an employee who has completed at least 5 years of service has a nonforfeitable right to a percentage of his accrued benefit derived from employer contributions which percentage is not less than the percentage determined under the following table:

| Years of service: | Nonforfeitable percentage |
|---|---|
| 5 | 25 |
| 6 | 30 |
| 7 | 35 |
| 8 | 40 |
| 9 | 45 |
| 10 | 50 |
| 11 | 60 |
| 12 | 70 |
| 13 | 80 |
| 14 | 90 |
| 15 | 100 |

(C)(i) A plan satisfies the requirements of this subparagraph if a participant who is not separated from the service, who has completed at least 5 years of service, and with respect to whom the sum of his age and years of service equals or exceeds 45, has a nonforfeitable right to a percentage of his accrued benefit derived from employer contributions determined under the following table:

| If years of service equal or exceed— | and sum of age and service equals or exceeds— | then the nonforfeitable percentage is— |
|---|---|---|
| 5 | 45 | 50 |
| 6 | 47 | 60 |
| 7 | 49 | 70 |
| 8 | 51 | 80 |
| 9 | 53 | 90 |
| 10 | 55 | 100. |

(ii) Notwithstanding clause (i), a plan shall not be treated as satisfying the requirements of this subparagraph unless any participant who has completed at least 10 years of service has a nonforfeitable right to not less than 50 percent of his accrued benefit derived from employer contributions and to not less than an additional 10 percent for each additional year of service thereafter.
29 U.S.C. § 1053(a)(2)(A)(B) & (C).

5. 29 U.S.C. § 1053 provides various exceptions to the nonforfeitability provisions of ERISA. The exceptions are not alleged to be applicable to the facts before this Court.

for plans in existence on January 1, 1974 until January 1, 1976. 29 U.S.C. 1061(b)(2). Because the pension plan at issue in this case was in effect on January 1, 1974, the nonforfeitability provisions of ERISA became effective with regard to it on January 1, 1976. The employer-employee relationship between the plaintiffs and the defendants did not terminate until June 1, 1977. Consequently, the plaintiffs were still employees of the defendant companies and were operating under the pension plan on the effective date of the nonforfeitability provisions of ERISA.

■ Defendants assert that the nonforfeitability provisions of ERISA do not apply to the plaintiffs' pension plan because the pension plan was not guaranteed by the PBGC. Plaintiffs assert that the nonforfeitability provisions of ERISA apply regardless of whether the PBGC guarantees the pension plan. The parties have thoroughly briefed this issue and after extensive research on the part of the Court, it appears the issue is one of first impression. The Court concludes that the nonforfeitability provisions of Title I are independent from the PBGC provisions of Title IV and therefore, apply regardless of whether the PBGC guarantees a pension plan.

The Act itself supports this conclusion that the nonforfeitability provisions of Title I are not dependent upon PBGC acceptance of a plan under Title IV. The stated Congressional policy of ERISA is "to protect ... the interests of participants in employee benefit plans ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal Courts." 29 U.S.C. § 1001(b). The Supreme Court has noted that the primary purpose of ERISA is to protect the interest of beneficiaries in pension plans. *Nachman Corp. v. Pension Benefit Guaranty Corporation*, 446 U.S. 359, 361, 362, 100 S.Ct. 1723, 1726, 1727, 64 L.Ed.2d 354 (1979). If defendants' assertion is correct, that only PBGC guaranteed plans are entitled to the benefits of the nonforfeitability provisions of ERISA, the emphasis of ERISA would be on the tax exemptions provided to employers who have a PBGC guaranteed plan instead of on the articulated reason of protecting employee benefits.

The issue before the Court in *Nachman*, was whether former employees with vested interests in a pension plan which terminated the day before ERISA became fully effective were covered by PBGC insurance, notwithstanding a provision in the plan limiting the benefits to the assets in the pension fund. In analyzing the problem, the Supreme Court held, "*[a]s one of the means* of protecting the interest of beneficiaries, Title IV of ERISA created a plan termination insurance program that became effective in successive stages." *Id.* at 362, 100 S.Ct. at 1726. (Emphasis added.) The Supreme Court's statement that a PBGC guarantee is "one of the means" of protecting pension plan beneficiaries indicates that Congress provided other means within ERISA.

The Supreme Court reiterated the principles it set forth in *Nachman* one year later in *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510–11, 101 S.Ct. 1895, 1899–1900, 68 L.Ed.2d 402 (1980):

As we recently observed, ERISA is a "comprehensive and reticulated statute," which Congress adopted after careful study of private retirement pension plans. *Nachman Corp. v. Pension Benefit Guarantee Corp.*, 446 U.S. 359, 361 [100 S.Ct. 1723, 1726, 64 L.Ed.2d 354] (1980). In *Nachman*, we observed that Congress through ERISA wanted to insure that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—... he actually receives it." *Id.* at 375 [100 S.Ct. at 1733]. For this reason, the concepts of vested rights and nonforfeitable rights are critical to the ERISA scheme. *See Id.* at 370, 378 [100 S.Ct. at 1730, 1734]. ERISA prescribes a vesting and accrual schedules, assuring that employees obtain rights to at least portions of their normal pension benefits

even if they leave their positions prior to retirement. Most critically, ERISA establishes that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a).

Retirees rely on this sweeping assurance that pension rights become nonforfeitable in claiming that offsetting those benefits with workers' compensation awards violates ERISA. Retirees argue first that no vested benefits may be forfeited except as expressly provided in § 1053. Second, retirees assert that offsets based on workers' compensation fall into none of those express exceptions. Both claims are correct; § 1053(a) prohibits forfeitures of vested rights except as expressly provided in § 1053(a)(3), and the challenged workers' compensation offsets are not among those permitted in that section. (Footnotes omitted.)

In *Alessi*, the Supreme Court reiterated that the focus and the primary function of ERISA is to guarantee employee pension benefits. The Court held that "no vested benefits may be forfeited except as expressly provided in § 1053." *Id.* at 511, 101 S.Ct. at 1900. The exceptions to § 1053 do not provide that the section is dependent upon the pension plan being guaranteed by the PBGC.

Defendants assert that the following language in *Nachman* supports their position:

Cf. S.Rep. No. 93–127, p. 10 (1973), 1 Leg.Hist. 596, noting that some "critics have proposed that corporate assets be committed to guarantee any pension obligations which exist at termination," which implies that the problem was largely due to the absence of any guarantee by the employer. That proposal was not adopted. *Congress opted instead for the insurance system run by the PBGC, with limited employer liability over to the PBGC. Nachman Corp. v. Pension Benefit Guarantee Corp.*, 446 U.S. at 379 f. 28, 100 S.Ct. at 1735 f. 28. (Emphasis added.)

This language is consistent with the Supreme Court's holding that the primary purpose of ERISA is to guarantee benefits to employees. In footnote 28 of *Nachman* the Supreme Court states that Congress did not want to rely solely upon the assets of a corporation to insure employee benefits. The assets of a corporation about to terminate its business were often insufficient to insure the employee benefits. This was an abuse Congress sought to eliminate in passing ERISA. Congress enacted the insurance system of the PBGC along with the rest of ERISA as a means of guaranteeing the benefits. The language in footnote 28 does not infer that employers are not directly liable to employees in non-PBGC plans. The Supreme Court is holding that as an additional means of insuring benefits to employees, Congress created the PBGC.

In *Murphy v. Heppenstall Co.*, 635 F.2d 233 (3rd Cir.1980), *cert. denied* 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982), the issue before the Court was whether retired employees could recover directly from their employer the difference between PBGC guaranteed payments and the amount provided in their collective bargaining agreement. The employer asserted that the PBGC benefits provided in Title IV of ERISA, 29 U.S.C. § 1301 *et seq.*, were the maximum to which the employees were entitled. The Court disagreed:

The employer misreads the plain wording of the statute, and misconstrues the legislative purpose motivating its enactment. Section 1362 and 1322, which the employer invokes as expressions of Congressional intent to limit employer liability, in no way addressed the pension benefits directly recoverable from the employer. Section 1362(b) does place a ceiling on employer liability for pension payments, but that liability is to the PBGC. Similarly, section 1322(a), (b)(1)(2)(3), limits the pension payments employees may recover from the PBGC. (Footnotes omitted.) *Id.* at 237–38.

In *Murphy*, the pension plan provided for benefits in excess of those guaranteed

by the PBGC. In the case before the Court, plaintiffs' pension benefits had not yet vested pursuant to the collective bargaining agreement. However, because the plaintiffs' benefits are vested pursuant to § 1053, the plaintiffs are in the same position as the employees in *Murphy*. Although the claim was for amounts in excess of PBGC coverage and therefore, the plan was covered by the PBGC, the Court in *Murphy* held that employees could directly sue their employer. Following the defendants' argument that only PBGC plans are subject to the nonforfeiture provisions of ERISA and that employees may only recover from the PBGC, employees could not sue their employers directly.

Defendants cite *A–T–O, Inc. v. Pension Benefit Guaranty Corp.*, 634 F.2d 1013 (6th Cir.1980) and *Matter of Defoe Shipbuilding Co.*, 639 F.2d 311 (6th Cir.1981) to support their proposition that pension plans not insured by the PBGC are not subject to the nonforfeiture provisions.

In *A–T–O, Inc. v. Pension Benefit Guaranty Corp.*, 634 F.2d 1013, the Court held that despite a contrary provision in the pension plan agreement, certain employee benefits were nonforfeitable and therefore, the PBGC had a right to recover from the employer any benefits paid. *Id.* at 1019. In *Matter of Defoe Shipbuilding*, 639 F.2d 311, the Court held the nonforfeitable benefits paid by the PBGC were not limited to the amount in the pension fund at the time of termination. *Id.* at 314.

Both *A–T–O* and *Matter of Defoe* deal with nonforfeitable benefits under a PBGC plan. *A–T–O* and *Matter of Defoe* do not give any indication of the nonforfeitability of pension benefits under a plan which is not insured by the PBGC.

The most relevant inquiry as to which pension benefits are nonforfeitable is provided in ERISA. Section 1053 provides that all pension plan benefits, except those specifically excluded in the statute, are nonforfeitable. There is no support in that section for the defendants' assertion that only benefits provided under a PBGC guaranteed plan are nonforfeitable. As empha-

sized by the Supreme Court in *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 Congress wanted to insure that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Id.* at 375, 100 S.Ct. at 1733. If only benefits from plans insured by the PBGC are nonforfeitable, employers could skirt the intent of Congress in passing ERISA by providing employees with a pension plan which does not comply with the requirements of Title IV. Accordingly, defendants' motion for summary judgment on Counts 2 and 4 of the complaint is denied.

II. *Plaintiffs Not Employed on the Effective Date of the Nonforfeiture Provisions of ERISA.*

◾ ERISA became enforceable in the Federal Courts on September 2, 1974. 29 U.S.C. § 1061(a). Congress chose to delay the effective date of the nonforfeiture provisions of ERISA 29 U.S.C. § 1053, for plans in existence on January 1, 1974, until plan years beginning on January 1, 1976. 29 U.S.C. § 1061(b)(2).

Plaintiff, Lydia MacDonald and the class she seeks to represent, ceased working for the defendants in February, 1975. Plaintiff MacDonald was not employed by the defendant companies on the effective date of the nonforfeiture provisions of ERISA. Defendants assert that because MacDonald is not covered by the nonforfeiture provisions of ERISA and she has not worked the minimum length of service as required by the pension plan, she is not entitled to pension benefits. The plaintiffs assert that because MacDonald was employed after the effective date of ERISA but left the defendant companies before the effective date of the nonforfeiture provisions, a rigorous reasonableness test should be applied to the forfeiture as held in *Amory v. Boyden Assoc.*, 434 F.Supp. 671, 673 (S.D.N.Y.1976).

In *Amory*, the Court held that as a consequence of the public policy expressed in

ERISA against forfeiture of pension benefits, there is a presumption of unreasonableness in forfeiture provisions even though the employees involved left the defendant company before the effective date of the nonforfeiture provisions. This Court is not persuaded by *Amory* in light of two Circuit Court opinions which have held that the nonforfeiture provisions of ERISA only protect against the forfeiture of pension benefits of those persons who were in an employee status on January 1, 1976.

In *Fremont v. McGraw-Edison Co.*, 606 F.2d 752 (7th Cir.1979) *cert. denied* 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980), the defendant company denied pension benefits to employees terminated before January 1, 1976 on the grounds that they had stolen customer lists from the company and were therefore, ineligible under the plan. The Court held that because the plaintiffs were not employed on the effective date of the nonforfeiture provisions, their pension benefits were not guaranteed. *Id.* at 755. The Court expressly declined to decide whether the *Amory* rigorous reasonableness test was correct, but the Court did hold that even applying such a test to the plaintiffs in that case, the company had a reasonable basis for denying the benefits. *Id.* 755–56.

In *Cohen v. Martins'*, 694 F.2d 296 (2d Cir.1982), the Court held that employees who retired before the effective date of the nonforfeiture provisions of ERISA were not guaranteed benefits. The Court held:

[h]ad Congress intended to extend the protections of the vesting requirements to retirees such as *Cohen*, it would have spoken of a "participant's right" to receive benefits. We will not lightly assume that Congress's choice of words, "an employee's right," was inadvertent. Indeed, an examination of ERISA's legislative history indicates that the language of § 1053(a) *reflects a conscious decision to restrict its coverage to persons actually employed on January 1, 1976.* *Id.* at 298. (Emphasis added.)

Plaintiff MacDonald was not an employee under the pension plan on January 1, 1976.

Her right to pension benefits are covered by the pension plan agreement in effect between her and the defendant companies. Accordingly, defendants' motion for summary judgment with regard to plaintiff Lydia MacDonald and the class she seeks to represent is granted on counts two and four of the complaint.

■ Defendants do not dispute that plaintiffs Bruchac, Reaves, and Payne completed the minimum length of service under ERISA and that they were employees on the effective date of the nonforfeiture provisions. Consequently, there are no genuine issues of material fact regarding plaintiffs Bruchac, Reaves, and Payne on counts two and four of the complaint. Accordingly, summary judgment is granted, as to liability only, in favor of plaintiffs Bruchac, Reaves, and Payne on counts two and four of the complaint.

### III. *Promissory Estoppel.*

In Count three of the complaint, plaintiffs allege that defendants should be estopped from denying liability for payment under the pension plan. Plaintiffs allege further that the pension plan was an inducement to their employment; that they relied upon this representation and that they did not partake in an alternative retirement security program. Defendants assert that only after an employee has complied with *all* the conditions of his employment contract relating to retirement benefits and has reached the retirement age specified in the contract, do his benefits become vested; therefore an estoppel argument does not apply to a contract for pension benefits between an employer and an employee.

■ The law in Ohio is well-established that an employee who complies with all the requirements of the pension agreement is entitled to his benefits. *Luli v. Sun Products*, 60 Ohio St.2d 144, 398 N.E.2d 553 (1979); *Sheehy v. Seilon, Inc.*, 10 Ohio St.2d 242, 227 N.E.2d 229 (1967); *Cantor v. Berkshire Life Insurance Co.*, 171 Ohio St. 405, 171 N.E.2d 518 (1960).

In *Schneider v. Electric Auto-Light Co.,* 456 F.2d 366 (6th Cir.1972), the Court held that employees who had not achieved the requisite age and service requirements of the pension plan were not entitled to pension benefits. However, *Schneider* was an action by former employees to recover damages arising out of the permanent shut down of the defendants' plant alleging only violations of the collective bargaining agreement. The Court in *Schneider* was not presented with a promissory estoppel claim.

■ In order to succeed on a claim of promissory estoppel, the plaintiff must prove (1) that a promise was made, (2) that the promisor should have reasonably expected to induce reliance on the part of the promisee, (3) that the promisee did in fact rely upon the promise and (4) that enforcement of the promise is necessary to avoid injustice. *Campbell v. Sirak,* 476 F.Supp. 21, 29 (S.D.Ohio 1979); *Aff'd. without opinion* 705 F.2d 451 (6th Cir.1982); Restatement (2d) of Contracts § 90.

In *Campbell v. Sirak,* 476 F.Supp. 21, the Court allowed the plaintiff to proceed on a promissory estoppel claim against the Ohio State University for wrongful termination of employment. After a trial on the merits, the Court held that the plaintiff relied unreasonably on his own mistaken beliefs and not upon the promises made by the defendants. *Id.* at 29. However, the Court did recognize the cause of action.

In *Local 1330, United States Steelworkers v. United States Steel Corp.,* 631 F.2d 1264 (6th Cir.1980), the Court recognized a promissory estoppel claim by the Union in an attempt to prevent the defendant from closing its steel plant in Youngstown, Ohio.

The Court affirmed the District Court, which held after a trial on the merits, that the defendants could not reasonably expect that the plaintiffs would rely upon a promise to keep the plants open if profits were sufficient to cover the plant's fixed costs. *Id.* at 1279. Although the Court ultimately ruled in favor of the defendants, the plaintiffs were permitted to proceed on their claim of promissory estoppel. *See also Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344 (8th Cir.1980) (promissory estoppel applied under Minnesota law in a pension benefit case).

■ The doctrine of promissory estoppel co-exists with the doctrine requiring employees to meet all the requirements of a pension plan agreement prior to entitlement to the benefits. Accordingly, the defendants' motion for summary judgment on count 3 of the complaint is denied with regard to all plaintiffs.

■ The plaintiffs have not established that there are no genuine issues of material fact regarding detrimental reliance on the defendants' promises of pension benefits. Accordingly, plaintiffs' motion for summary judgment on count three is denied.

IV. *Waivers.*

Plaintiffs, Lydia MacDonald, Hazel Reaves and Clara Payne, signed waivers of their rights under the pension plan.[6] Plaintiffs MacDonald and Reaves allege they did not receive any payment in exchange for the waiver. Plaintiff Payne alleges she received $2,000.00 severance pay in exchange for the waiver. Defendants assert that any rights plaintiffs MacDonald,

---

**6.** The waiver provides as follows:
For and in consideration of the payment of severance pay of $_____ from the Yellow Cab Company of Cleveland, Inc., the Zone Cab Corporation, the Universal Cab Co., United Garage and Service Corporation of Cleveland, and Ohio and Yellow Cab Limosines, Inc., (collectively referred to as "the companies"), receipt of which is hereby acknowledged, I do hereby release the Companies and their officers, directors, shareholders, employees, agents, successors and assigns of and from all manner of actions, causes of actions, suits, debts, claims, liens, liabilities, controversies, damages and demands, whether in law or in equity, which I do or my successors and assigns have or might have in consequence of my employment by any of the Companies, including specifically, but not limited to, those arising from or in connection with any retirement plan heretofore maintained by any of the Companies (all of my rights thereunder, if any, I do hereby waive).

Reaves, Payne and the class they seek to represent, had in the pension plan were waived.

 The Supreme Court has determined in *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 that 29 U.S.C. § 1053 prohibits the forfeiture of vested rights except as expressly provided within the section. Any forfeiture provision in a pension plan whether or not it is voluntary, is void unless it falls within one of the exceptions provided in § 1053. The Court fails to see any distinction between a forfeiture provision within the pension plan agreement and one entered into outside of the agreement. With the effective date of § 1053 the plaintiffs' alleged rights under the pension plan became nonforfeitable. Payment of severance pay in exchange for a waiver of rights is insufficient to defeat the nonforfeiture provisions of ERISA.

Consequently, because the waivers contravene the nonforfeiture provisions and the public policy of ERISA, they are void. Accordingly, defendants' motion for summary judgment against plaintiffs Lydia MacDonald, Hazel Reaves, and Clara Payne, premised upon the waivers, is denied.

IT IS SO ORDERED.

### JUDGMENT ENTRY

Pursuant to the reasons set forth in the Memorandum Opinion filed contemporaneously with this Judgment Entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1) The motion for summary judgment of plaintiffs, Edward Bruchac, Hazel Reaves, and Clara Payne on Counts two and four of the complaint is granted as to liability of the defendants only, in that the Court holds that plaintiffs Bruchac, Reaves, and Payne's pension benefits vested and became nonforfeitable on January 1, 1976, pursuant to the Employee Retirement Security Act of 1974.

2) The motion for summary judgment of defendants on Counts two and four of the complaint is denied with regard to plaintiffs Edward Bruchac, Hazel Reaves, and Clara Payne.

3) The motion for summary judgment of defendants on Counts two and four of the complaint is granted with regard to plaintiff Lydia MacDonald in that the Court holds, as a matter of law, plaintiff Lydia MacDonald was not employed by the defendants on the effective date of the nonforfeiture provisions of the Employee Retirement Security Act of 1974 and therefore, is not entitled to pension benefits pursuant to that Act.

4) The motions for summary judgment of the plaintiffs and the defendants are denied on Count three of the complaint.